UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTONIO CRAWFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00538-JPH-MKK |
| | ) |
| SHANNON MACKELLAR, | ) |
| | ) |
| Defendant. | ) |

**ORDER SUSTAINING DEFENDANT'S
AFFIRMATIVE DEFENSE OF EXHAUSTION**

Asia Crawford[1] filed this lawsuit against Lieutenant Shannon Mackellar claiming Lt. Mackellar failed to protect her from being sexually assaulted while she was housed at the United State Penitentiary in Terre Haute, Indiana ("USP Terre Haute"). Lt. Mackellar moved for summary judgment on the grounds that Ms. Crawford failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq*. An evidentiary hearing was held pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

For the reasons explained below, the Court finds that Lt. Mackellar has met her burden of proof by showing that administrative remedies were available to Ms. Crawford. The Court further finds that Ms. Crawford failed to exhaust her available administrative remedies as required by the PLRA. Accordingly, Lt. Mackellar's affirmative defense of exhaustion is **sustained**, Ms. Crawford's

---

[1] Asia Crawford's legal name is Antonio Crawford. She is a transgender woman and goes by the first name Asia.

1

claims are **dismissed without prejudice**, and final judgment shall enter accordingly.

## I. Background

Ms. Crawford is an inmate currently confined in federal custody at the United States Penitentiary in Marianna, Florida. Dkt. 108. She is serving a federal sentence and is set to be released in August 2024. Dkt. 10, ¶ 9. She was previously confined at USP Terre Haute from February 19, 2020, through February 17, 2021. (Trial Ex. 9). At all relevant times in her complaint, she was confined at USP Terre Haute.

On or about August 17, 2020, Ms. Crawford alleges she was sexually assaulted by her roommate while she was incarcerated in the Special Housing Unit. Dkt. 10, ¶ 32. Prior to the assault, Ms. Crawford alleges she complained multiple times to Lt. Mackellar about being harassed and threatened by her roommate with violence and sexual attacks. *Id.* ¶¶ 29, 30. According to Ms. Crawford, Lt. Mackellar did nothing to move Ms. Crawford or address her situation. *Id.*

Ms. Crawford filed this lawsuit against Lt. Mackellar and T.J. Watson on October 19, 2020.[2] Dkt. 1. Lt. Mackellar moved for summary judgment on the affirmative defense that Ms. Crawford failed to exhaust her administrative remedies as required by the PLRA. Dkt. 46. Ms. Crawford filed a response.

---

[2] The only claim against T.J. Watson was for injunctive relief. After Ms. Crawford was transferred to another facility, that claim was dismissed and Mr. Watson was terminated as a Defendant. *See* Dkts. 40, 43.

Dkt. 52. The Court found that factual disputes precluded summary judgment, dkt. 64, and accordingly scheduled a *Pavey* hearing for June 2, 2022. Dkt. 104.

## II. Findings of Fact

The following facts are found by the Court to be true based on the evidence presented during the *Pavey* hearing.

### A.   The BOP's Administrative Remedy Program

The BOP has a formal administrative remedy system, codified at 28 C.F.R. § 542.10, *et seq.* and BOP Program Statement 1330.18, Administrative Remedy Procedures for Inmates ("the BOP Program Statement"), through which inmates may seek formal review of a complaint related to any aspect of their imprisonment. (Trial Ex. 1, BOP Program Statement; Testimony of Renee Turner); *see also* 28 C.F.R. § 542.10.

The BOP's administrative remedy program consists of four steps. First, an inmate must attempt to resolve the issue informally with prison staff by submitting what's known as a BP-8. Second, if the grievance cannot be resolved informally, the inmate must submit a written Administrative Remedy Request, or BP-9, to the Warden. These first two steps must generally be completed within 20 days of the underlying incident. Third, if the inmate is not satisfied with the Warden's response to the BP-9, the inmate may appeal that response to the appropriate Regional Director by submitting a BP-10. Fourth, if the inmate remains dissatisfied, the inmate may appeal the Regional Director's decision by submitting a BP–11 form to the Office of General Counsel, Central Office. (Trial Ex. 1; Trial Ex. 2, Terre Haute's Institutional Supplement); *see also*

28 C.F.R. § 542.13–15. During the relevant portion of Ms. Crawford's complaint, USP Terre Haute had an administrative remedy system in place consistent with the applicable regulations and the BOP's Program Statement. This grievance process was set out in an Institutional Supplement, THX-1330.17B. (Turner Testimony; Trial Ex. 2).

All formal administrative remedy requests submitted by inmates are logged into an electronic record-keeping system maintained by the Bureau of Prisons. This database is known as the "SENTRY" database. At USP Terre Haute, the SENTRY database was maintained by Renee Turner, who was the Executive Assistant to the Warden and the coordinator of the administrative remedy program. (Turner Testimony).

Ms. Turner reviewed the SENTRY database for Ms. Crawford's inmate number, Reg. No. 43793-424, and testified that Ms. Crawford had submitted eight remedy requests between November 6, 2019 and February 18, 2021 (the date the report was run). (Trial Ex. 3, SENTRY Administrative Remedy Generalized Retrieval). Ms. Turner testified that three of the remedies were initiated shortly before the assault on August 17, 2020, or after it occurred:

> 1. On July 28, 2020, Ms. Crawford initiated Remedy No. 1037230 at the Institution Level alleging that she needed a transfer to another institution due to Covid conditions (the "Covid-19 Grievance"). On September 3, 2020, Ms. Crawford filed a BP-10 form with the Regional Office, which responded on October 29, 2020. Ms. Crawford appealed the remedy to the Central Office, which responded on January 12, 2021. Ms. Turner testified that Ms. Crawford fully exhausted this remedy.
>
> 2. On October 26, 2020, Ms. Crawford initiated Remedy No. 1055766 at the Regional Level alleging staff misconduct. In this remedy, Ms. Crawford alleged that she was being "insulted sexually

4

>by two (Lt.) prison officers name Mackellar and Tussy, the sexual harassments occurred 10-15-2020 at approximately 8-10 am." The Regional Office responded on November 6, 2020, and Ms. Crawford took no further action related to this remedy.
>
>3. On November 19, 2020, Ms. Crawford initiated Remedy No. 1057611 at the Institution Level alleging that staff gave her property to another inmate. The Warden responded on December 7, 2020, and Ms. Crawford took no further action related to this remedy.

(Trial Ex. 3; *see also* Trial Ex. 4, Administrative Remedy Packet 1037230; Trial Ex. 5, Administrative Remedy Packet 1055766).

A key factual dispute at the *Pavey* hearing was whether grievance forms were available to Ms. Crawford. Several USP Terre Haute officials testified as to the availability of grievance forms.

Kevin Wasson was a case counselor at USP Terre Haute. He testified that Ms. Crawford was an inmate on his caseload during 2020 and that, in August, he was assigned to the A1 Unit, which was Ms. Crawford's housing unit. Mr. Wasson testified that one of his job duties was to provide administrative remedy forms to inmates. If an inmate on his caseload was assigned to the Special Housing Unit, Mr. Wasson testified that he would make rounds weekly to ensure that the inmates' needs were being met. During these rounds he would pass out remedy forms. Mr. Wasson made rounds on August 21, 2020, and August 28, 2020. (Trial Ex. 6, Special Housing Unit, Aug. 21 Entry and Aug. 28 Entry). Mr. Wasson testified that he would never have refused to provide an administrative remedy form to Ms. Crawford or any other inmate. (Wasson Testimony). Indeed, Mr. Wasson provided Ms. Crawford with a BP-8 Informal

5

Resolution form in July 2020, which she used to pursue her Covid-19 Grievance. (Trial Ex. 4; Wasson Testimony).

Nathan Cole was a Case Manager at USP Terre Haute. He testified that Ms. Crawford was an inmate on his caseload during 2020, and that in August, he too was assigned to Ms. Crawford's housing unit. Mr. Cole testified that one of his job duties was to provide administrative remedy forms to inmates. Like Mr. Wasson, if an inmate on his caseload was assigned to the Special Housing Unit, Mr. Cole testified that he would make rounds weekly to ensure that the inmates' needs were being met. During these rounds he would pass out remedy forms. Mr. Cole specifically remembers Ms. Crawford and did not recall having any issue or problems with Ms. Crawford. Mr. Cole does not recall Ms. Crawford ever informing him that she needed a remedy form or that she was having issues with her cellmate. (Cole Testimony).

Katie Marshall was a Unit Manager at USP Terre Haute. She testified that Ms. Crawford was an inmate on her caseload during 2020 and that in August, she was assigned to Ms. Crawford's housing unit. Similar to Mr. Wasson and Mr. Cole, Ms. Marshall testified that one of her job duties was to provide administrative remedy forms to inmates. If an inmate on her caseload was assigned to the Special Housing Unit, Ms. Marshall testified that she would make rounds weekly to ensure that the inmates' needs were being met. Ms. Marshall made rounds in the USP – Terre Haute Special Housing Unit on August 20, 2020 and August 27, 2020. (Trial Ex. 6, Aug. 20 entry and Aug. 27 entry). Ms. Marshall does not recall Ms. Crawford ever informing her that she needed a remedy form

6

or that she was having issue with her cellmate. Ms. Marshall testified she would never have refused to provide an administrative remedy form to Ms. Crawford or any other inmate. (Marshall Testimony).

Ms. Crawford also testified at the *Pavey* hearing. At the outset, she stated that when she arrived at USP Terre Haute, she was educated about the administrative remedy program. In August 2020, the case counselor assigned to her was B. Carson. (Crawford Testimony). Ms. Crawford introduced an exhibit that shows three entries concerning her case counselors at USP Terre Haute:

1. K. Wasson (from 2/19/2020 through 8/14/2020)
2. B. Carson (from 8/15/2020 through 1/29/2021)
3. B. Carson (from 1/29/2021 through 2/9/2021)

(Trial Ex. 200). According to Ms. Crawford, Mr. Carson never came to the Special Housing Unit where she was housed. Ms. Crawford explained that USP Terre Haute's policy was that forms were provided by the case counselor, and she did not have the opportunity to receive grievance forms and return them because Mr. Carson never made rounds to her unit. *Id.*

During cross-examination, Lt. Mackellar's counsel asked Ms. Crawford about her interrogatories. (Crawford Testimony). During discovery, Ms. Crawford was asked to identify the members of her unit team who denied her grievance forms. Ms. Crawford responded, "Correctional Counsel Wasson, Unit Manager

7

Marshall." (Trial Ex. 10, Ms. Crawford's Discovery Responses). She did not identify Mr. Carson as a person who denied her grievance forms.

Ms. Crawford sought to introduce two pieces of evidence, to which Lt. Mackellar objected. First, she requested video surveillance of the Special Housing Unit from August 2020 to October 2020. Second, she attempted to introduce a Special Housing Unit fire-route schematic to demonstrate where officers would have had to travel to deliver her forms. The Court sustained Lt. Mackellar's objections finding that Lt. Mackellar did not have such video footage in her custody or control, and that USP Terre Haute had a security interest in the fire-route schematic. The Court further found that the schematic was cumulative of the witness testimony. *See* Dkt. 104.

At the conclusion of the *Pavey* hearing, each party was given an opportunity to either make a closing statement or submit proposed findings after the hearing. Ms. Crawford opted to make an oral statement. She argued that the BOP's Program statement says that grievance forms should be obtained from the institution staff, which is ordinarily the case counselor. (Trial Ex. 1 at 5). She testified that during the relevant time period—after August 17, 2020—her counselor, Mr. Carson, never came to the special housing unit. Ms. Crawford argued that administrative remedies were not available to her because she could not obtain one from Mr. Carson. (Crawford Testimony). Lt. Mackellar opted to submit written findings in lieu of an oral statement. Dkt. 105.

## III. Conclusions of Law

### A. Legal Standard

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. §1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). The statute reads that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. The exhaustion requirement is mandatory: a court cannot excuse an inmate's failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 638–39 (2016).

"To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require.") (internal quotation omitted).

However, administrative remedies must be "available" to the inmate. *Hernandez v. Dart,* 814 F.3d 836, 840 (7th Cir. 2016); *see also Reid*, 962 F.3d at 329 ("The exhaustion requirement, however, hinges on the availability of administrative remedies.") (internal quotations and citation omitted). "[T]he

ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross*, 578 at 642. An administrative procedure may be unavailable when (1) the process operates as a "simple dead end," (2) when it is so opaque that it is incapable of use, or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44

The exhaustion framework can essentially be distilled into two inquiries: (1) Have the facility or prison officials shown that the grievance process was "available" to the inmate?; and (2) Have the facility or prison officials shown that the inmate failed to complete grievance process before filing suit? *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."); *see also Wallace v. Baldwin*, 55 F.4th 535, 545 (7th Cir. 2022).

**B.     Discussion**

Based on the evidence presented at the *Pavey* hearing, the Court concludes that: (1) USP Terre Haute's grievance process was available to Ms. Crawford; and that (2) she failed to complete that process before filing suit on her underlying claims.

### 1. The grievance process was available to Ms. Crawford

The evidence establishes that the grievance process was available to Ms. Crawford. During the relevant period, USP Terre Haute had an

administrative remedy process through which an inmate could seek formal review of a complaint related to any aspect of his or her imprisonment. This process was also available to inmates housed in the Special Housing Unit.

Kevin Wasson, Nathan Cole, and Katie Marshall each testified about: having been assigned to Ms. Crawford's housing unit; providing administrative remedy forms to inmates was part of their respective job duties; and making weekly rounds in the Special Housing Unit to pass out grievance forms when an inmate on their caseload was assigned there. They all uniformly testified that they would not have refused to provide an administrative remedy form to Ms. Crawford if she had requested one. The Court assigns significant weight to the testimony of Mr. Wasson, Mr. Cole, and Ms. Marshall, as each testified credibly.

The documentary evidence corroborates their testimony and further supports a finding that the grievance process was available to Ms. Crawford. The Special Housing Unit Logs reflect that Mr. Wasson made rounds on August 21 and August 28, (Trial Ex. 6), and that Ms. Marshall made rounds on August 20 and August 27, (Trial Ex. 6). The SENTRY database reflects that Ms. Crawford had filed multiple grievances while at USP Terre Haute between November 6, 2019 and February 18, 2021.

Ms. Crawford contends that the grievance process was unavailable because officials at USP Terre Haute did not follow their own policy. According to her reading, the grievance policy instructs that a BP-8 form should be obtained from her case counselor, and her unrebutted testimony is that her case counselor during the relevant timeframe, Mr. Carson, never came to the special

11

housing unit. But the grievance policy is not as narrow as she imagines. The provision Ms. Crawford relies on states,

> The inmate shall obtain the appropriate form from [Community Corrections Center] staff or institution staff (ordinarily, the correctional counselor).

Trial Ex. 1 at 5. "Ordinarily" does not mean "exclusively." The plain language of the policy permits staff members other than an inmate's assigned counselor to provide a remedy form to an inmate. The record shows that Mr. Wasson, Mr. Cole, and Ms. Marshall made rounds to the Special Housing Unit, and that at least one of them was available to give Ms. Crawford a grievance form on multiple dates in close proximity to August 17, the date of the attack that is the subject of this lawsuit.

Ms. Crawford next contends the grievance process was unavailable because she spoke with "other prison officials" that came inside the Special Housing Unit and they denied her grievances. (Crawford Testimony). The Court does not find this testimony to be credible. First, Ms. Crawford does not identify specifically who the other prison officials are. Second, Mr. Wasson, Mr. Cole, and Ms. Marshall all testified that they made rounds to the Special Housing Unit and if Ms. Crawford had requested forms, they would not have denied them to her. Third, Mr. Wasson had provided Ms. Crawford a grievance form on a prior occasion. (Trial Ex. 4 at 4, 5). Finally, Ms. Crawford was able to file other grievances, both shortly before and shortly after the August 2020 assault. Ms. Crawford provides no credible explanation for why she was able to obtain grievance forms in July and October 2020 but not in August. Accordingly, the

Court rejects Ms. Crawford's assertion that prison officials refused to provide her grievance forms.

The Court therefore finds that USP Terre Haute's grievance process was available to Ms. Crawford.

### 2. Ms. Crawford failed to exhaust available administrative remedies

The undisputed evidence shows that Ms. Crawford did not submit any grievances related to the failure-to-protect claim brought in this case. There is no evidence that Ms. Crawford submitted a BP-8, BP-9, BP-10, or BP-11 related to the allegations in her complaint. The SENTRY database reflects that Ms. Crawford submitted grievances both before and after August 17, the date of the attack that is the subject of this lawsuit. None of those grievances included the allegations in this lawsuit. Additionally, Ms. Crawford did not testify that she submitted any grievances related to the incident; she only testified that the process was unavailable to her. Accordingly, the Court finds that Ms. Crawford did not fully complete USP Terre Haute's grievance process related to the underlying incident. *Reid*, 962 F.3d at 329.

Since the grievance process was available to Ms. Crawford and since she did not fully complete the process, the Court finds that Ms. Crawford failed to exhaust her administrative remedies under the PLRA. *Crouch v. Brown*, 27 F.4th 1315, 1321 (7th Cir. 2022) ("[A] prisoner must exhaust his or her administrative remedies before filing a federal claim about prison conditions."). As such, her claim in this case must be dismissed without prejudice. *Ford v. Johnson,* 362

13

F.3d 395, 401 (7th Cir. 2004) ("We therefore hold that *all* dismissals under § 1997e(a) should be without prejudice.").

### C. Prison Rape Elimination Act

Neither party discussed the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301, *et seq*. The Court is mindful of the limiting principle of party presentation in our adversary system. *Mwangangi v. Nielsen*, 48 F.4th 816, 829 (7th Cir. 2022). Yet the Court discusses PREA *sua sponte* here since the facts of the case appear to implicate it, *see Smallwood v. Williams*, 59 F.4th 306, 319–20, 319 n.7 (7th Cir. 2023), and because Defendants argue that Ms. Crawford was required to submit an administrative remedy request within 20 days of the underlying incident, dkt. 105 at 7 ¶ 4.

PREA was enacted, among other reasons, to develop and implement national standards for detection, prevention, reduction, and punishment of prison rape. 34 U.S.C. § 15602. While PREA "generally left intact the PLRA's exhaustion requirement," *Does 8–10 v. Snyder*, 945 F.3d 951, 956 (6th Cir. 2019), regulations promulgated pursuant to PREA loosened some of the restrictions on what is required of an inmate to exhaust their administrative remedies. *See Smallwood*, 59 F.4th at 319 n.7 (citing 28 C.F.R. § 115.52(b)(3) and 28 C.F.R. § 115.52(b)(1)).

Here, the BOP Program's statement contains a section on exhaustion procedures for PREA claims. (*See* Trial Ex. 1 at 12–13, Sec. 16). USP Terre Haute has likewise adopted similar PREA procedures in its Institutional Supplement. (*See* Trial Ex. 2 at 5 ¶ 9). Application of PREA to the facts here would not affect

14

the outcome. While time limitations applicable to most grievances do not apply to grievances brought under PREA, *see* 28 C.F.R. § 115.52(b), the designated evidence shows that Ms. Crawford did not file any grievance at any time related to the attack referenced in her complaint. *See Foley v. Paul*, No. 22-1458, 2023 WL 111873, at *2 (7th Cir. Jan. 5, 2023) (affirming grant of summary judgment on exhaustion grounds and rejecting inmate's claim he exhausted under PREA because the record did not contain any evidence he filed a grievance about the underlying sexual assault).

## IV. Conclusion

For those reasons, Lt. Mackellar's defense of failure to exhaust available administrative remedies relating to Ms. Crawford's failure-to-protect claim is **sustained**. Ms. Crawford's claim is **dismissed without prejudice**. Final judgment shall enter accordingly.

**SO ORDERED.**

Date: 5/25/2023

                                        James Patrick Hanlon
                                        United States District Judge
                                        Southern District of Indiana

Distribution:

ANTONIO CRAWFORD
43793-424
MARIANNA - USP
MARIANNA FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 7007
MARIANNA, FL 32447

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov